UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Tony Hines,<br><br>    Plaintiff<br><br>v.<br><br>James Dzurenda, et al.,<br><br>    Defendants | Case No.: 2:24-cv-00060-JAD-NJK<br><br>**Order Screening First<br>Amended Complaint and Dismissing<br>Some Claims with Leave to Amend<br>by November 8, 2024**<br><br>[ECF No. 3] |

Plaintiff Tony Hines brings this pro se civil-rights action under 42 U.S.C. § 1983, claiming that his First, Eighth, and Fourteenth Amendment rights were violated when he was placed under investigation and falsely charged with prison violations while incarcerated in the Nevada Department of Corrections. Because Hines applies to proceed *in forma pauperis*,[1] I screen his first amended complaint[2] under 28 U.S.C. § 1915A. Having done so, I find that he has pled colorable First Amendment retaliation and Eighth Amendment conditions-of-confinement claims, but he has not pled colorable claims under the Fourteenth Amendment for due-process violations, or under the First Amendment for mail interference or violations of his rights to free speech and expression. So I dismiss those insufficiently pled claims and give Hines until November 8, 2024, to file a second amended complaint to cure the deficiencies in those claims.

---

[1] ECF No. 2.

[2] ECF No. 3. Hines filed a first amended complaint while awaiting screening, so I consider that as his operative complaint and screen it.

I.  **Background**

    A.  **Factual Allegations**[3]

In September 2022, Hines was incarcerated at Northern Nevada Correctional Center ("NNCC"). On September 2, 2022, senior investigator R. Suwe placed Hines under investigation on the basis that Hines sent or received letters discussing plans to introduce narcotics into the NNCC. Suwe opened Hines's outgoing mail and copied its contents but still permitted the mail to be sent, and Suwe listened to Hines's phone calls. Because Hines used the common phrase "the eagle has landed" during one of his conversations on the telephone, Suwe concluded that Hines may have received contraband. Hines asserts that Suwe had no other evidence or support to reach his conclusion that Hines may have received contraband.[4]

On January 13, 2023, Hines was informed that he was under investigation. Hines alleges that his incoming mail did not refer to narcotics and that he was targeted based on false allegations. Hines contacted the Inspector General's office and issued a complaint with Felicia Johnson. After Hines contacted the Inspector General's office, on January 25, 2023, a notice of charges was issued against him for the possession or sale of narcotics, including attempt or conspiracy to do so. Suwe relied on confidential information in his investigation and refers to confidential information in Hines's notice of charges.[5]

Hines was relocated to Unit 5-A-15, a lower-level housing unit. The lower-level housing unit had broken windows and no heating during extremely cold temperatures. Hines remained in the lower-level housing unit in freezing temperatures for approximately 49 days.[6]

---

[3] This is merely a summary of Hines's allegations and not intended as findings of fact.
[4] ECF No. 3 at 5–7.
[5] *Id*. at 5–7, 19.
[6] *Id*. at 6, 8.

2

On March 16, 2023, officer William Miller conducted a disciplinary hearing and Hines was found guilty. Hines asserts that his due-process rights were violated because his notice of charges alleges that he committed two offenses based on the same evidence. He also alleges that there was no evidence to support the allegations against him and that his "past crimes" were considered during the disciplinary process. He further asserts that he does not have a record of misbehavior.[7]

**B.     Causes of Action**

Based on these allegations, Hines sues Warden Breitenbach, R. Suwe, W. Miller, Barraza Klien, and James Dzurenda.[8] Hines brings claims based on four different theories of liability: (1) a First Amendment claim for violation of his freedom of speech and expression, (2) a First Amendment claim for retaliation, (3) an Eighth Amendment claim for conditions of confinement, and (4) a Fourteenth Amendment due-process claim. In addition, I construe Hines's FAC as alleging a mail-interference claim under the First Amendment. He seeks monetary relief.[9]

**II.     Discussion**

**A.     Screening Standard**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[10] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek

---

[7] *Id*. at 6–10, 23.
[8] *Id*. at 3–4.
[9] *Id*. at 12.
[10] *See* 28 U.S.C. § 1915A(a).

monetary relief from a defendant who is immune from such relief.[11]  All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact.  This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[12]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[13]  In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[14]  Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[15] but a plaintiff must provide more than mere labels and conclusions.[16]  "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[17]  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[18]

---

[11] *See* 28 U.S.C. § 1915A(b)(1)(2).

[12] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[13] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[14] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[15] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[16] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[18] *Id.*

## III. Analysis of Claims

### A. Hines states a First Amendment retaliation claim.

Inmates have a First Amendment right to file grievances and to pursue civil-rights litigation in the courts.[19] "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."[20] To state a First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[21] Total chilling is not required to state a retaliation claim; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.[22]

Hines states a colorable First Amendment retaliation claim. He alleges that after he contacted the Inspector General's office to file a complaint, Suwe issued a notice of charges against him. These allegations are enough for screening purposes to state a First Amendment retaliation claim, so Hines's First Amendment retaliation claim will proceed against Suwe.

---

[19] *Rhodes*, 408 F.3d at 567.
[20] *Id*.
[21] *Id*. at 567–68.
[22] *Id*. at 568–69.

5

### B.    Hines fails to state a First Amendment mail-interference claim.

Prisoners have a First Amendment right to send and receive mail.[23]  Prisons, however, "may adopt regulations [that] impinge on an inmate's constitutional rights if those regulations are 'reasonably related to legitimate penological interests.'"[24]  Such "interests include 'security, order, and rehabilitation.'"[25]  Prison officials may justifiably censor outgoing mail concerning escape plans, information about proposed criminal activity, or the transmittal of encoded messages.[26]  Prison officials may also visually inspect outgoing mail to determine whether it contains contraband material which threatens prison security or material threatening the safety of the recipient.[27]

The court analyzes prison regulations concerning incoming mail under the four factors outlined in the United States Supreme Court's opinion in *Turner v. Safley*[28]: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there is an "absence of ready alternatives."[29]  Hines fails to state a colorable claim for interference with his mail under the First Amendment.  He does not

---

[23] *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995).

[24] *Id*. at 165.

[25] *Id*.

[26] *Procunier v. Martinez*, 416 U.S. 396, 413 (1974).

[27] *Witherow*, 52 F.3d at 266.

[28] *Turner v. Safley*, 482 U.S. 78 (1987); *see also Thornburgh v. Abbott*, 490 U.S. 401, 411–13 (1989).

[29] *Id*. at 89-91 (internal quotation marks omitted).

6

allege that Suwe or any other defendant destroyed or delayed any particular piece of mail. He does not allege improper mail tampering. Although he asserts that Suwe inspected his mail, such inspection was based on security concerns related to contraband, and his mail was nonetheless sent and/or received. So I dismiss this claim without prejudice and with leave to amend. If Hines chooses to amend this claim, he must allege true facts sufficient to show that any of the defendants interfered with his right to send or receive mail for no valid reason.

### C. Hines fails to state a violation-of-freedom-of-speech or expression claim under the First Amendment.

The Ninth Circuit has held, "sensibly and expansively," prisoners have a first amendment right "to communicate with persons outside prison walls."[30] In addition to the right to send and receive mail, prisoners have a First Amendment right to telephone access subject to reasonable security limitations.[31] If the limitations on access are reasonable, there is no First Amendment violation. Institutional security concerns justify recording and monitoring outgoing telephone calls.[32]

Hines fails to state a colorable claim alleging a violation of his freedom of speech or expression under the First Amendment. He does not allege any defendants tampered with his mail in that his mail was not sent or received. Nor has he alleged that his ability to contact people outside prison walls has been restricted in any way. So I dismiss this claim without prejudice and with leave to amend. If Hines chooses to amend this claim, he must allege true

---

[30] *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002).

[31] *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986).

[32] *United States v. Van Poyck*, 77 F.3d 285, 290-91 (9th Cir. 1996) (finding that "any expectation in outbound calls from prison is not objectively reasonable and that the Fourth Amendment is not triggered by the routine taping of such calls.").

7

facts sufficient to show that any of the defendants interfered with his ability to contact people residing outside of prison walls for no valid reason. Merely alleging that a defendant monitored his phone calls will not be sufficient to state a colorable claim against that defendant.

### D. Hines states an Eighth Amendment conditions-of-confinement claim.

The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[33] Conditions of confinement may, consistent with the Constitution, be restrictive and harsh.[34] But "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."[35]

When challenging conditions of confinement, a plaintiff must make two showings.[36] First, the plaintiff must make an "objective" showing that the deprivation was "sufficiently serious" to form the basis for an Eighth Amendment violation.[37] Second, the plaintiff must make a "subjective" showing that the prison official acted "with a sufficiently culpable state of mind."[38]

When determining whether the conditions of confinement meet the objective showing, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment.[39] "[T]he deprivation alleged must be, objectively, sufficiently

---

[33] *Helling v. McKinney*, 509 U.S. 25, 31 (1993).
[34] *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).
[35] *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).
[36] *Id.*
[37] *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).
[38] *Id.*
[39] *See Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981).

serious" and "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."[40]  "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."[41]

"[P]risoners have a right to protection from extreme cold."[42]  "Whether an inmate's exposure to cold temperatures constitutes an Eighth Amendment violation depends on the severity of the cold, the duration of the prisoner's exposure, the presence of an alternative means to warmth (*i.e.*, a blanket or jacket), the efficacy of that alternative, and the presence of 'other uncomfortable conditions[.]'"[43]  For example, an Eighth Amendment violation may lie where prisoners are exposed to "subfreezing temperatures for five to nine hours" without "winter clothing" or blankets.[44]

Hines has alleged sufficient facts to state a colorable claim for conditions of confinement under the Eighth Amendment at this early stage in the litigation.  He states that he was moved to and resided in a lower-level housing unit that had broken windows and no heating during freezing weather for approximately 49 days.  This is enough for screening purposes to permit this claim to proceed against Defendants Suwe and Breitenbach.

---

[40] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted).

[41] *Wilson*, 501 U.S. at 305 (noting that "*[s]ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise").

[42] *Micenheimer v. Soto*, No. 13-cv-3853, 2013 WL 5217467, at *5 (C.D. Cal. Sept. 16, 2013) (quoting *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997)).

[43] *Miller v. Sanchez*, No. 20-cv-06, 2020 WL 528010, at *8 (C.D. Cal. Feb. 3, 2020) (quoting *Micenheimer v. Soto*, 2013 WL 5217467, at *5).

[44] *Johnson v. Lewis*, 217 F.3d 726, 732-33 (9th Cir. 2000).

### E. Hines fails to state a Fourteenth Amendment due-process claim.

To state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.[45] In *Sandin v. Connor*, the United States Supreme Court held that a prisoner has a liberty interest when confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[46] The *Sandin* court focused on three factors in determining that the plaintiff possessed no liberty interest in avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment;" and (3) the length of the plaintiff's sentence was not affected.[47]

When a protected liberty interest exists and a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate.[48] When a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the evidence

---

[45] *Sandin v. Conner*, 515 U.S. 472, 487 (1995).
[46] *Id.* at 484.
[47] *Id.* at 486–87.
[48] *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974).

justifying the decision to segregate the prisoner.[49] After the prisoner has been placed in administrative segregation, prison officials must periodically review the initial placement.[50] An inmate has the right to notice and the right to be heard.[51] The Ninth Circuit has held that if a prisoner alleges material differences between the conditions in general population and administrative segregation, the prisoner's procedural-due-process claim should not be dismissed on the pleadings.[52]

Hines fails to state a colorable due-process claim. Based on the allegations, it is unclear when Hines was moved to lower-level housing. Though he alleges that he was moved to lower-level housing while "awaiting disciplinary charges," which indicates that Hines was placed in administrative segregation,[53] he also attaches a summary of his disciplinary hearing that indicates that he was relocated to disciplinary segregation for approximately 48 days following that hearing. Because the analysis of Hines's due-process claim depends on whether he was placed in administrative or disciplinary segregation, I dismiss Hines's Fourteenth Amendment due-process claim without prejudice and with leave to amend.

If Hines chooses to amend this claim, he must allege true facts showing when he was relocated to lower-level housing and/or whether he was placed on administrative or disciplinary segregation. He must allege true facts sufficient to show that he was deprived of a legally recognized liberty interest and therefore must allege true facts sufficient to show that, as a result

---

[49] *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995).
[50] *See Hewitt*, 459 U.S. at 477 n.9.
[51] *Mendoza v. Blodgett*, 960 F.2d 1425, 1430 (9th Cir. 1992).
[52] *See Jackson v. Carey*, 353 F.3d 750, 755-57 (9th Cir. 2003).
[53] ECF No. 3 at 6.

of the discipline, he suffered atypical and significant hardship in comparison to ordinary incidents of prison life. Hines must allege true facts sufficient to show how each defendant deprived him of the liberty interest and must allege true facts sufficient to show that the defendant did this *without the constitutionally required procedural requirements*. General and conclusory allegations, or those alleging that a defendant violated administrative regulations or made false accusations will be insufficient.

## IV. Leave to Amend

Hines has leave to amend to allege additional true facts to show a Fourteenth Amendment due-process claim, a First Amendment mail-interference claim, and a First Amendment violation-of-freedom-of-speech and expression claim. If Hines chooses to file an amended complaint, he is advised that an amended complaint supersedes (replaces) the original complaint, so the amended complaint must be complete in itself.[54] He must file the amended complaint on this court's approved prisoner-civil-rights form, and it must be entitled "Second Amended Complaint." Hines must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of the form. Rather, in each count, he should allege <u>facts</u> sufficient to show what <u>each</u> defendant did to violate his civil rights. **He must file the amended complaint by November 8, 2024.**

## Conclusion

IT IS THEREFORE ORDERED that the operative complaint is the first amended complaint (ECF No. 3), and:

---

[54] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original").

- The Fourteenth Amendment due-process claim, the First Amendment mail-interference, and First Amendment violation-of-freedom-of-speech and expression claims are DISMISSED with leave to amend by November 8, 2024; and

- The First Amendment retaliation and Eighth Amendment conditions-of-confinement claims MAY PROCEED.[55]

If plaintiff chooses to file an amended complaint, he must use the approved form and he shall write the words "Second Amended" above the words "Civil Rights Complaint" in the caption. The amended complaint will be screened in a separate screening order, and **the screening process will take <u>many months</u>. If plaintiff does not file an amended complaint, by November 8, 2024, this action will proceed immediately on the First Amendment retaliation and Eighth Amendment conditions-of-confinement claims only.**

IT IS FURTHER ORDERED that the Clerk of the Court is directed to **SEND** plaintiff the approved form for filing a § 1983 prisoner complaint, instructions for the same, and a copy of his first amended complaint (ECF No. 3).

Dated: October 9, 2024

_____
U.S. District Judge

---

[55] A decision on the application to proceed *in forma pauperis* (ECF No. 2) is deferred.