**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Tony Hines, | Case No.: 2:24-cv-00060-JAD-NJK |
| Plaintiff | |
| v. | **Order Screening Second Amended Complaint** |
| Warden Breitenbach, et al., | |
| Defendants | [ECF No. 5] |

Plaintiff Tony Hines brings this pro se civil-rights action under 42 U.S.C. § 1983, claiming that his First, Eighth, and Fourteenth Amendment rights were violated when he was placed under investigation and in disciplinary segregation.  In my previous order, I found that Hines alleged colorable First and Eighth Amendment claims but also granted him leave to amend his Fourteenth Amendment due-process claim, First Amendment mail-interference claim, and First Amendment violation-of-freedom-of-speech and expression claims.[1]  Because Hines applies to proceed *in forma pauperis*,[2] I screen his second amended complaint under 28 U.S.C. § 1915A.  Having done so, I find that Hines has pled colorable First Amendment retaliation, Eighth Amendment conditions-of-confinement, and Fourteenth Amendment due-process claims, so these claims will proceed to the litigation track after a 90-day stay to allow the parties the opportunity to resolve this case through the court's inmate-mediation program.

---

[1] ECF No. 4.
[2] ECF No. 2.

I. Background

    A.    Factual Allegations

In September 2022, Hines was incarcerated at Northern Nevada Correctional Center (NNCC). On September 2, 2022, senior investigator R. Suwe placed Hines under investigation based on intercepted letters discussing plans to introduce narcotics into NNCC. Suwe also listened to Hines's phone calls. Hines asserts that his telephone conversations are protected by his First Amendment right to freedom of speech and expression.[3]

On January 13, 2023, Hines was informed that he was under investigation for conspiracy to introduce contraband into the facility. Hines then contacted the Inspector General's office and issued a complaint with Felicia Johnson. On January 25, 2023, a notice of charges was issued against Hines for the possession or sale of narcotics, including attempt or conspiracy to do so. Hines was not provided a description of the letters that allegedly discussed plans to introduce narcotics into the facility and that were the basis for the charges against him.[4]

Hines alleges that he was immediately relocated to disciplinary segregation in Unit 5-A-15, a lower-level housing unit. The lower-level housing unit had broken windows and no heating during extremely cold temperatures. Hines remained in the lower-level housing unit in freezing temperatures for approximately 49 days.[5]

On March 16, 2023, officer William Miller, Barraza Klein, and C/O Klein conducted a disciplinary hearing and Hines was found guilty. Hines asserts that his due-process rights were violated because the ruling was based on an unidentified informant with unsubstantiated

---

[3] ECF No. 5 at 5-7.
[4] *Id*. at 5-7, 31.
[5] *Id*. at 5-6, 8.

2

credibility. He also alleges that there was no evidence to support the allegations against him and that his "past crimes" were considered during the disciplinary process. Hines asserts that he was immediately sent to disciplinary segregation for 30 days.[6]

### B.  Causes of Action

Based on these allegations, Hines sues Warden Breitenbach, R. Suwe, W. Miller, and Barraza Klien, and C/O Klien.[7] He brings claims based on five different theories of liability: (1) a First Amendment claim for violation of his freedom of speech and expression, (2) a First Amendment claim for retaliation, (3) an Eighth Amendment claim for conditions of confinement, (4) a Fourteenth Amendment due-process claim, and a mail-interference claim under the First Amendment. He seeks monetary relief.[8]

## II.  Discussion

### A.  Screening Standard

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[9] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[10] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who

---

[6] *Id*. at 6-7, 9, 24.
[7] *Id*. at 4.
[8] *Id*. at 11.
[9] *See* 28 U.S.C. § 1915A(a).
[10] *See* 28 U.S.C. § 1915A(b)(1)(2).

3

are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[11]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[12] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[13] Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[14] but a plaintiff must provide more than mere labels and conclusions.[15] "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[16] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[17]

## III.   Analysis of Claims

### A.   Hines states a First Amendment retaliation claim.

Inmates have a First Amendment right to file grievances and to pursue civil rights litigation in the courts.[18] "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory

---

[11] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[12] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[13] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[14] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[15] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[17] *Id.*

[18] *Rhodes*, 408 F.3d at 567.

actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."[19] To state a First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) . . . that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[20] Total chilling is not required to state a retaliation claim; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.[21]

I find that Hines states a colorable First Amendment retaliation claim. He alleges that after he contacted the Inspector General's office to file a complaint, Suwe issued a notice of charges against him. These allegations are sufficient to state a First Amendment retaliation claim at this screening stage. So Hine's First Amendment retaliation claim will proceed against Suwe.

**B.      Hines fails to state a First Amendment mail-interference claim.**

Prisoners have a First Amendment right to send and receive mail,[22] but prisons "may adopt regulations [that] impinge on an inmate's constitutional rights if those regulations are 'reasonably related to legitimate penological interests.'"[23] Such "interests include 'security,

---

[19] *Id*.
[20] *Id*. at 567-68.
[21] *Id*. at 568-69.
[22] *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995).
[23] *Id*. at 165.

order, and rehabilitation.'"[24]  Prison officials may justifiably censor outgoing mail concerning escape plans, information about proposed criminal activity, or the transmittal of encoded messages.[25]  Prison officials may also visually inspect outgoing mail to determine whether it contains contraband material which threatens prison security or material threatening the safety of the recipient.[26]  When assessing the constitutionality of prison regulations that affect inmates' constitutional rights, the court applies the four-factor test from *Turner v. Safley*: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there is an "absence of ready alternatives."[27]

        I find that Hines fails to state a colorable claim for interference with his mail under the First Amendment.  He does not allege that Suwe or any other defendant destroyed or delayed any particular piece of mail.  Nor does he allege improper mail tampering.  I therefore dismiss this claim with prejudice for failure to state a claim because I find that amendment would be futile in light of my previous order granting leave to amend on this issue.

---

[24] *Id.*

[25] *Procunier v. Martinez*, 416 U.S. 396, 413 (1974).

[26] *Witherow*, 52 F.3d at 266.

[27] *Turner v. Safley*, 482 U.S. 78, 89–91 (1987) (internal quotation marks omitted).

6

### C. Hines fails to state a violation-of-freedom-of-speech and expression claim under the First Amendment.

The Ninth Circuit has held, "sensibly and expansively," that prisoners have a First Amendment right "to communicate with persons outside prison walls."[28] In addition to the right to send and receive mail, prisoners have a First Amendment right to telephone access subject to reasonable security limitations.[29] If the limitations on access are reasonable, there is no First Amendment violation. Institutional security concerns justify recording and monitoring outgoing telephone calls.[30]

Hines fails to state a colorable claim alleging a violation of his freedom of speech or expression under the First Amendment. Hines does not allege any defendants tampered with his mail in that his mail was not sent or received. Nor has he alleged that his ability to contact people outside prison walls has been restricted in any way. I previously dismissed this claim with leave to amend, informing Hines that he must allege true facts sufficient to show that any of the defendants interfered with his ability to contact people residing outside of prison walls for no valid reason and that merely alleging that a defendant monitored his phone calls will not be sufficient to state a colorable claim against that defendant. Hines has failed to allege such facts in his SAC. I construe this failure as Hines's inability to truthfully allege such facts. So I dismiss this claim with prejudice for failure to state a claim because further leave to amend would be futile.

---

[28] *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002).

[29] *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986).

[30] *United States v. Van Poyck*, 77 F.3d 285, 290-91 (9th Cir. 1996) (finding that "any expectation in outbound calls from prison is not objectively reasonable and that the Fourth Amendment is not triggered by the routine taping of such calls.").

### D. Hines states an Eighth Amendment conditions-of-confinement claim.

The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[31] Conditions of confinement may, consistent with the Constitution, be restrictive and harsh.[32] But "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."[33] When challenging conditions of confinement, a plaintiff must make two showings.[34] First, the plaintiff must make an "objective" showing that the deprivation was "sufficiently serious" to form the basis for an Eighth Amendment violation.[35] Second, the plaintiff must make a "subjective" showing that the prison official acted "with a sufficiently culpable state of mind."[36]

To determine whether the conditions of confinement meet the objective showing, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment.[37] "[T]he deprivation alleged must be, objectively, sufficiently serious" and "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."[38] "Nothing so amorphous as 'overall conditions' can rise to the

---

[31] *Helling v. McKinney*, 509 U.S. 25, 31 (1993).
[32] *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).
[33] *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).
[34] *Id.*
[35] *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).
[36] *Id.*
[37] *See Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981).
[38] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted).

level of cruel and unusual punishment when no specific deprivation of a single human need exists."[39]

"[P]risoners have a right to protection from extreme cold."[40] "Whether an inmate's exposure to cold temperatures constitutes an Eighth Amendment violation depends on the severity of the cold, the duration of the prisoner's exposure, the presence of an alternative means to warmth (*i.e.*, a blanket or jacket), the efficacy of that alternative, and the presence of 'other uncomfortable conditions[.]'"[41] For example, an Eighth Amendment violation may lie where prisoners are exposed to "subfreezing temperatures for five to nine hours" without "winter clothing" or blankets.[42]

Hines states a colorable Eighth Amendment conditions-of-confinement claim. He alleges that he was moved to and resided in a lower-level housing unit that had broken windows and no heating during freezing weather for approximately 49 days. These allegations are sufficient to state a colorable conditions-of-confinement claim at the screening stage. So Hines's conditions-of-confinement claim will proceed against Defendants Suwe and Breitenbach.

### E. Hines states a colorable Fourteenth Amendment due-process claim.

To state a cause of action for deprivation of procedural due process, a plaintiff must first

---

[39] *Wilson*, 501 U.S. at 305 (noting that "*[s]ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise").

[40] *Micenheimer v. Soto*, No. 13-cv-3853, 2013 WL 5217467, at *5 (C.D. Cal. Sept. 16, 2013) (quoting *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997)).

[41] *Miller v. Sanchez*, No. 20-cv-06, 2020 WL 528010, at *8 (C.D. Cal. Feb. 3, 2020) (quoting *Micenheimer v. Soto*, 2013 WL 5217467, at *5).

[42] *Johnson v. Lewis*, 217 F.3d 726, 732-33 (9th Cir. 2000).

establish the existence of a liberty interest for which the protection is sought.[43]  In *Sandin v. Conner*, the United States Supreme Court held that a prisoner has a liberty interest when confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[44]  The High Court focused on three factors in determining that the plaintiff possessed no liberty interest in avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment;" and (3) the length of the plaintiff's sentence was not affected.[45]  When a protected liberty interest exists and a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate.[46]

      Hines states a colorable Fourteenth Amendment due-process claim.  Based on the allegations, he was immediately placed in disciplinary segregation in a lower-level housing unit that had broken windows and no heating during freezing weather.  He further alleges that he was not provided a description of the evidence against him in that he was not provided a description of the letters that allegedly discussed plans to introduce narcotics into the facility.  These

---

[43] *Sandin v. Conner*, 515 U.S. 472, 487 (1995).
[44] *Id.* at 484.
[45] *Id.* at 486-87.
[46] *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974).

allegations are sufficient at this screening stage to state a colorable due-process claim. So this claim will proceed against Defendants W. Miller, Barraza Klein, and C/O Klein.

### Conclusion

IT IS THEREFORE ORDERED that a decision on the application to proceed *in forma pauperis* (ECF No. 2) is deferred.

IT IS FURTHER ORDERED that the operative complaint is the second amended complaint (ECF No. 5), and Clerk of the Court is directed to **SEND** plaintiff a courtesy copy of it (ECF No. 5).

IT IS FURTHER ORDERED that:

- The First Amendment mail-interference and First Amendment violation of freedom of speech and expression claims are DISMISSED with prejudice, as amendment would be futile.

- **The First Amendment retaliation, Eighth Amendment condition-of-confinement, and Fourteenth Amendment due-process claims MAY PROCEED**.

Given the nature of the claims that the court has permitted to proceed, IT IS FURTHER ORDERED that this action is stayed for 90 days to allow Hines and Defendants Breitenbach, R. Suwe, W. Miller, Barraza Klien, and C/O Klien an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period and until the court lifts the stay, no other pleadings or papers may be filed in this case, and the parties will not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the court to do so. I refer this case to the court's Inmate Early Mediation Program, and the court will enter a subsequent

order.  Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General will file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay.  If the parties proceed with this action, the court will then issue an order setting a date for defendants to file an answer or other response.  Following the filing of an answer, the court will issue a scheduling order setting discovery and dispositive motion deadlines.

I remind the parties that "settlement" may or may not include payment of money damages.  It also may or may not include an agreement to resolve the plaintiff's issues differently.  A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

If the case does not settle, the plaintiff will be required to pay the full $350.00 statutory filing fee for a civil action.  This fee cannot be waived, and the fee cannot be refunded once the court enters an order granting plaintiff's application to proceed *in forma pauperis*.  If the plaintiff is allowed to proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account.  *See* 28 U.S.C. § 1915(b).  If he is not allowed to proceed *in forma pauperis*, the full $350 statutory filing fee for a civil action plus the $55 administrative filing fee, for a total of $405, will be due immediately.

If any party seeks to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" no later than 21 days prior to the date set for mediation.  The responding party will have 7 days to file a response.  No reply will be entertained.  Thereafter, the court will issue an order, set the matter for hearing, or both.

If the plaintiff needs an interpreter to participate in the mediation program, he must file a notice identifying the interpretation language and the need for the interpreter within 30 days from the date of this order.

IT IS FURTHER ORDERED that the Clerk of Court is further directed to **ADD** the Nevada Department of Corrections to the docket as an Interested Party and electronically serve a copy of this order and copies of all items previously filed in this case by regenerating the Notices of Electronic Filing on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the interested party on the docket.  This does not indicate acceptance of service.

IT IS FURTHER ORDERED that the Attorney General's Office must advise the court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Interested Party for the purpose of participation in the Early Mediation Program.  No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.

Dated: December 10, 2024

_____
U.S. District Judge

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Tony Hines, <br><br> Plaintiff <br><br> v. <br><br> Warden Breitenbach, et al., <br><br> Defendants | Case No. 2:24-cv-00060-JAD-NJK <br><br> REPORT OF ATTORNEY GENERAL RE RESULTS OF 90-DAY STAY |

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF WILL NOT FILE THIS FORM.**

On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report ninety (90) days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

\_\_\_\_\_  A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_\_  A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_\_  No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

    \_\_\_\_  No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

    \_\_\_\_  No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

    \_\_\_\_  None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

    \_\_\_\_  The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

    \_\_\_\_  The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

    \_\_\_\_  The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

    \_\_\_\_  None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____     _____

                                      Print                                                Signature

Address: _____

Phone: _____

Email: _____